

**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

| | |
|---|---|
| *Federal Center* | *716/843-5700* |
| *138 Delaware Avenue* | *fax 716/551-3052* |
| *Buffalo, New York 14202* | *Writer's Telephone:   716/843-5838* |
| | *Charles.Kruly@usdoj.gov* |

July 31, 2025

Hon. Lawrence J. Vilardo
United States District Judge
2 Niagara Square
Buffalo, New York 14202

      Re:     *United States v. Hassan Fares*, 22-CR-76-LJV

Dear Judge Vilardo:

The government submits this letter in response to the defendant's letter addressing his return to the United States. *See* Dkt. 78.

In May 2025, the Court granted the defendant's request to "travel . . . to Lebanon from May 2025 to June 2025 for a period of 41 days." Dkt. 73 at 6 (motion); Dkt. 74 (order granting motion). Because of travel complications, the defendant arrived in Lebanon on May 22, 2025. Dkt. 76 at 1. The Court then granted the defendant's request to extend his trip, ordering that the defendant could remain in Lebanon "for a period of 35 days on the ground . . . not including travel days reasonably necessary to travel to and from Lebanon." Dkt. 77. Thus, the defendant was required to leave Lebanon by June 25, 2025. The defendant has yet to comply with the Court's order. He blames his failure to do so on his finances and travel complications stemming from the conflict between Israel and Iran. Neither explanation, however, withstands scrutiny.

Flights out of Lebanon are, and have been, available since current hostilities between Israel and Iran began in June 2025. Some airlines temporarily suspended flights to and from Beirut in June, but many airlines only suspended flights to and from Israel and Iran.[1]  And in July, many airlines continued to only suspend flights to and from Israel and Iran—not Lebanon.[2] Indeed, of the 16 airlines identified in one of the articles the defendant cites, only *one* airline suspended travel to and from Beirut. *Id.* The same is true today. A search of a

---

[1] *See Which airlines paused or cancelled flights after Israel's attack on Iran*, https://www.aljazeera.com/news/2025/6/13/which-airlines-paused-or-cancelled-flights-after-israels-attack-on-iran (June 13, 2025).

[2] *See Airlines suspend Middle East flights*, https://www.reuters.com/world/middle-east/airlines-suspend-flights-after-israeli-strikes-2025-06-13/ (July 15, 2025).

common travel booking website shows more than 20 options for traveling from Beirut to Rio de Jannero on August 7, 2025. There have, then, been multiple options for the defendant to comply with the Court's order.

The Court should likewise be skeptical that financial constraints are truly preventing the defendant from traveling. In a June 24, 2025, text message to Officer Payne, the defendant stated that he had booked a return flight for June 15, 2025. *See* July 30, 2025, Petition for Offender Under Supervision. If the defendant could afford a return flight in June, he can surely afford one now. But even if the defendant does not personally have the ability to pay for his flight, his family surely does; after all, just four months ago, the defendant's family offered to pay his entire outstanding restitution judgment of more than $20,000. *See* Dkt. 66-1 at 6. In other words, like his claimed inability to find a flight out of Lebanon, the defendant's claim that travel is too expensive does not withstand scrutiny.

It therefore appears that defendant is attempting to run out the clock on his supervised release by using conflict in the Middle East as a reason why he cannot comply with the Court's order. The defendant's motion requests permission to stay in Lebanon until September. *See* Dkt. 78. But his text message to Officer Payne states that his intent is to "extend [his] return at least until the war is over." There is little reason to believe that conflict between Israel and Iran will end in the next month. Thus, come September, the defendant will surely identify yet another reason why he is unable to return to the United States.

Conflict between Israel and Iran has been ongoing for years. Indeed, that conflict directly affected Lebanon in September 2024, when Israel killed Hizballah's Secretary General, Hassan Nasrallah, in the Dahieh suburb of Beirut, where the defendant's family lives. What is more, the government understands that those airstrikes hit buildings *on the same street* where the defendant's family lives. Yet three months later, the defendant filed a motion asking for early termination of his supervision so that he could travel to Lebanon. *See* Dkt. 66. The defendant does not explain why it was safe to travel to Lebanon last year—just months after an attack on the neighborhood where his family lives—but travel is now too dangerous because of a conflict that has been ongoing for years.

The defendant's term of supervised release is scheduled to end on January 8, 2026. If the defendant waits until after that date to return to the United States, and if the Court does not authorize a violation petition before then, the Court will have no authority to sanction the defendant's violation of the Court's order. *See* 18 U.S.C. § 3583(i) (authorizing courts to revoke supervision after term of supervised release expires "if, before [the] expiration [of supervision], a warrant or summons has been issued on the basis of an allegation of such a violation"). Thus, to protect the Court's authority, the government requests that the Court authorize the violation petition submitted by Probation. In the alternative, the government requests that the Court direct the defendant to return to the United States by a date-certain in the near future so that, if the defendant fails to comply with the Court's order, Probation may file an Amended Petition for Offender Under Supervision before the defendant's term of supervised release expires.

2

Very truly yours,

MICHAEL DIGIACOMO
United States Attorney

*/s/ CHARLES M. KRULY*

BY: CHARLES M. KRULY
   Assistant United States Attorney